# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

LARRY PIATEK,

        Plaintiff,

    v.                           Case No. 08-C-569

MICHAEL THURMER,

        Defendant.

## DECISION AND ORDER ON PETITION FOR A WRIT OF HABEAS CORPUS

## I. PROCEDURAL BACKGROUND

On July 2, 2008, the petitioner, Larry Piatek ("Piatek"), filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his confinement at Waupun Correctional Institution, Waupun, Wisconsin. Respondent Warden Michael Thurmer admits that Piatek's petition was timely filed under 28 U.S.C. § 2244(d)(1)(A). (Resp't Ans. ¶ 5.) Both parties consented to the exercise of full jurisdiction by a magistrate judge, including entry of final judgment. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b)(1).

In April 2004, a jury convicted Piatek of two counts of battery to a police officer, attempted disarming of a police officer, escape, two counts of attempted operation of a vehicle without the owner's consent, attempted escape, fleeing, two counts of resisting a police officer, operating a vehicle while revoked, and possession of cocaine. (Resp't Ans. Ex. A.) In October 2004, Piatek was sentenced to fifty-three years imprisonment, comprised of twenty-six years of confinement and twenty-seven years and three months of extended supervision. (Resp't Br. at 2.)

Piatek sought postconviction relief, arguing that the circuit court erred in declining to order a competency hearing on April 16, 2004 and failing to order an examination sua sponte on April 20,

2004.  *See State v. Piatek*, No. 2006AP2631-CR, 2007 WI App 230, ¶ 14, 306 Wis. 2d 126, 740 N.W.2d 902 (Wis. Ct. App. Sept. 12, 2007) (unpublished).  Piatek also alleged that he was denied due process of law because he was incompetent at the time of his trial, and he sought a new trial due to newly discovered evidence.  *Id.*  After a postconviction motion hearing, the circuit court denied Piatek's request for another competency hearing, finding that Piatek was competent for trial.  *Id.* at ¶¶ 20, 22.  Accordingly, the circuit court denied Piatek's postconviction motion.  *Id.* at ¶ 22.

Thereafter, Piatek appealed his conviction and the circuit court's denial of his request for a competency hearing to the Wisconsin Court of Appeals.  *Id.* at ¶ 23.  The court of appeals affirmed Piatek's conviction.  *Id.* at ¶ 36.  On January 22, 2008, the Wisconsin Supreme Court denied Piatek's petition for review, pursuant to Wis. Stat. § 808.10.  (Resp't Ans. Ex. H.)  Piatek did not file a petition for certiorari to the United States Supreme Court.

Piatek's habeas petition raises claims that invoke protections of the Fourteenth Amendment.  More precisely, Piatek contends that he is entitled to a writ of habeas corpus because (1) his right to due process of law was violated when the trial court denied his motion for a competency hearing on April 16, 2004; (2) his right to due process of law was violated when the trial court failed to sua sponte order a competency examination on April 20, 2004; and (3) his right to due process of law was violated because he was incompetent at trial.  Piatek also claims that he is entitled to an evidentiary hearing based on newly discovered evidence.  (Pet.'s Br. at 1.)

The claims presented in Piatek's petition have now been fully briefed by the parties and are ready for resolution.  For the reasons discussed below, Piatek's petition for a writ of habeas corpus will be denied, and this action will be dismissed.

2

## II.  FACTUAL BACKGROUND

Piatek indicates that he is not challenging any of the state court's factual findings.  (Pet.'s Reply at 4.)  Therefore, the following is a summary of the facts underlying Piatek's conviction, as thoroughly and clearly set forth by the Wisconsin Court of Appeals:

Piatek was arrested in August 2002.  Piatek's counsel sought a competency examination in January 2003 because Piatek was delusional and hearing voices.  The circuit court ordered a competency examination.  Dr. Brad Smith concluded in February 2003 that Piatek was competent, although he suffered from polysubstance dependence and antisocial personality disorder which featured deceitfulness and use of aliases.  Dr. Smith opined to a reasonable degree of medical certainty that Piatek was able to understand the criminal proceedings and assist in his defense and that Piatek could choose to interact appropriately with counsel and the court.

Piatek refused to come to court on March 4 and April 23, 2003.  At the next scheduled hearing on pretrial matters, May 1, Piatek claimed that he expected to be sentenced and then demanded to go home.  He also claimed not to know the judge, and he alleged that drugs were being put in his food in jail.  Piatek continued to have outbursts during the proceedings.

In June 2003, counsel moved to withdraw, and Piatek sought to proceed pro se. In July, the circuit court held a hearing, reviewed the file, and found that the previous competency report suggested that Piatek was "very well aware of what's going on. Manipulates the situation thoroughly.  And does that consistently."  After reviewing Piatek's waiver of counsel form, the circuit court found that Piatek was not competent to proceed pro se, and the state public defender appointed counsel.  The court then scheduled another competency hearing.

Successor counsel sought additional time to prepare for the competency hearing.  In addition, counsel informed the court that Piatek previously attempted suicide and was an inpatient at a mental health facility, and this information would not have been included in Dr. Smith's February 2003 competency evaluation.  In September 2003, Piatek withdrew his request for a competency evaluation and waived his right to present evidence relating to competency.  The court found that Piatek was responsibly handling his obligations in the case.

In December 2003, the circuit court heard Piatek's motion to recuse due to bias. The court declined to recuse because its rulings against Piatek did not amount to bias.

With trial scheduled to start on Monday, April 19, 2004, proceedings were held on Friday, April 16.  Piatek's counsel filed an emergency motion for a competency hearing because Piatek was planning a disturbance at trial which would result in his death, and he lacked substantial mental capacity to assist in his own defense.  The

3

motion cited Piatek's extreme agitation, lack of concentration, depression, history of prior suicide attempts, a suicide letter dated April 8, and a prior adjudication of incompetence in California. The motion also cited a marked increase in these symptoms after Piatek ceased taking Prozac.

The court found that the matters raised in counsel's motion were before the February 2003 competency examiner who opined that Piatek was competent. The court then heard argument on the request for a competency examination. The court reviewed the so-called suicide letter and found that it was consistent with Piatek's prior conduct in the case when he made various false claims. The court suspected that Piatek was attempting to manipulate his counsel. During the hearing, the physician who prescribed Prozac for a mood disorder told the court that Piatek's symptoms would be exaggerated after he ceased taking Prozac. Piatek decided on his own to discontinue Prozac because he did not like the side effects. The physician opined that Piatek was "able to understand where he is and who people are." The physician stated that many of Piatek's problems stemmed from voluntary behavior but that if Piatek were actively suicidal, the physician could not reasonably assure that he would be fit for trial the following Monday. The physician further opined that given Piatek's previous behavior and his post-Prozac symptoms, it was not likely that his condition would improve before trial because a significant part of Piatek's conduct was voluntary and the volitional nature of that conduct was not likely to change.

In declining to order competency proceedings on April 16, the court found that Piatek brought his problems upon himself. He ceased taking Prozac without informing the prescribing physician when he was aware that he was facing a serious trial. The court found that Piatek's current conduct was consistent with his conduct throughout the case. During the hearing, Piatek demonstrated that he was following the proceedings and was alert. The court found that Piatek had been malingering and maneuvering throughout the case, was attempting to manipulate the court, and he wrote the suicide letter to serve that goal. The court did not find a basis to doubt Piatek's competency.

The parties gathered for trial three days later on Monday, April 19. Piatek refused to come to court, and he was later delivered to the court shackled in a wheelchair. The court did not deem Piatek's refusal to appear as proof of incompetence. Rather, the conduct was consistent with his previous obstreperous conduct. The court again suggested that Piatek was malingering. The State referred to transcripts of Piatek's telephone calls from the jail which established that, at least early in his confinement, Piatek was playing games and fabricating his symptoms to manipulate the court and counsel. The court observed that Piatek had been in custody for nineteen months, and it was time to try the case.

Piatek appeared in the courtroom shortly after 10:00 a.m. on Monday, April 19. Defense counsel reported that Piatek had just revealed that he had taken thirty-five Trazodone pills, his head was drooping, he appeared sleepy, and his skin was white and pasty. An officer stated that Piatek was alert during transportation to the

4

courtroom from the jail. The court was skeptical that Piatek had actually taken the pills but decided to send Piatek to the hospital for evaluation and treatment, if necessary.[1] Court reconvened after lunch, and the prosecutor reported that the hospital expected Piatek to be ready for trial the next day. The court reiterated that Piatek was manipulating the court and counsel in an attempt to delay the trial.

On April 20 at 11:00 a.m., court convened. When Piatek joined the proceedings at 1:00, the court noted that defense counsel had conferred with Piatek, and defense counsel stated that they were ready to proceed. Defense counsel mentioned that Piatek's physician thought he should see a psychiatrist. Security concerns prompted the court to deny Piatek the use of a writing implement during trial, and Piatek had to whisper to his counsel. On the last day of trial, the court admonished Piatek for whispering too loudly. The jury convicted Piatek on all but one count.

Postconviction, Piatek alleged that the circuit court erred in declining a competency examination April 16 and should have ordered an examination sua sponte on April 20 in response to the Trazodone overdose. Piatek also alleged that the court was biased and that he was denied due process and a fair trial because trial commenced while he was withdrawing from the Trazodone overdose. Piatek sought a new trial due to newly discovered evidence of the amount of Trazodone in his system and expert testimony on the effects of Trazodone which was not available on April 20 when Piatek returned to court from the hospital.

At the postconviction motion hearing, Dr. John Pankiewicz, a forensic psychiatrist, testified that Trazodone is a sleep aid and has sedating effects. The doctor testified that patients experience mental dulling at a Trazodone dose of 25 mg.; the laboratory reports indicated that Piatek had ingested 5000-6000 mg. Piatek's mental status was checked from the evening of the first day of trial, April 19, until he was discharged the following day. Piatek's hospital stay would not have been restful as he was repeatedly awakened for monitoring and mental status checks. The psychiatrist opined that to a reasonable degree of medical certainty, Piatek was not competent for trial when he returned to court on April 20 due to the effects of the Trazodone on his mental alertness and functioning, and Piatek would have had difficulty following the proceedings and conferring with and assisting his counsel. The psychiatrist opined that a person's behavior and outward appearance might not indicate Trazodone-induced cognitive dullness.

On cross-examination, the psychiatrist opined that the Trazodone would have been metabolized by early in the morning of April 20. Nevertheless, Piatek still would have been affected by the large dosage and would not have been competent for trial on April 20 because he would have been cognitively dull. However, assuming Piatek had adequate rest on the evening of April 20, Piatek likely would have been competent for trial by April 21. The psychiatrist admitted that in preparing his opinion, he did not

---

[1] The hospital pumped Piatek's stomach.

review the transcripts of the April 20 proceedings, and did not talk to defense counsel, the security officers or the treating physicians about Piatek's demeanor on April 20. His opinion that Piatek would have been incompetent for trial on April 20 was based solely upon the amount of Trazodone Piatek ingested. The psychiatrist conceded that Piatek may not have been as affected by the overdose and subsequent treatment as other patients who might have been rendered incompetent for trial under similar circumstances. The psychiatrist conceded that it was possible Piatek was competent for trial on April 20.

On redirect, the psychiatrist clarified that a patient is discharged from the hospital once the patient no longer needs hospital-based care; a discharge does not mean that the patient is no longer suffering from the effects of a drug overdose.

The State called Sergeant Thomas Hausner who was in charge of court security. He spent hours with Piatek during his time in jail. He was at the hospital when Piatek was released, and he followed Piatek back to the courthouse. Hausner testified that on April 20, Piatek was alert, answered appropriately and seemed to be the same person he was before the overdose.

The State argued that Piatek was competent for trial because the hospital discharge summary described Piatek as alert, stable and appropriate for discharge. Furthermore, defense counsel did not alert the court on April 20 that Piatek was unable to participate meaningfully at trial.

2007 WI App 230, ¶¶ 3-19, 306 Wis. 2d 126, 740 N.W.2d 902 (footnote omitted).

### III. STANDARD OF REVIEW

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [State] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997). Title 28 U.S.C. § 2254 states, in pertinent part, the following:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

6

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 100 Stat. 1214, which provides, in pertinent part, that the federal courts may not grant habeas relief unless the state court's judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000) (citing *Hogan v. Hanks*, 97 F.3d 189, 192 (7th Cir. 1996)).

A decision is "contrary to" established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). However, in a habeas case, "[a] state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [the Supreme Court's] opinions." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court need not even be aware of Supreme Court precedent "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*.

A state court decision results in an "unreasonable application" of clearly established federal law when that court either: (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407; *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004).

7

However, a federal habeas court may not grant relief under the "unreasonable application" prong unless the state court's application of Supreme Court precedent "l[ies] well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (citing *Williams*, 529 U.S. at 411). Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

## IV. DISCUSSION

The Due Process Clause of the Fourteenth Amendment prohibits the states from trying and convicting mentally incompetent defendants. *See Pate v. Robinson*, 383 U.S. 375, 384-85 (1966). When the procedures protecting a defendant's right not to be tried or convicted while incompetent to stand trial fail, a defendant is deprived of his due process right to a fair trial. *See Pate*, 383 U.S. at 385-86. Whether a defendant is competent depends on whether he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).

Where the evidence raises a "bona fide doubt" as to a defendant's competence to stand trial, the defendant is entitled to a competency hearing on the issue. *See Pate*, 383 U.S. at 385; *see also Drope v. Missouri*, 420 U.S. 162, 173 (1975). Further, "a trial judge must inquire sua sponte into a defendant's mental state if events in court call into question the defendant's competency." *Woods v. McBride*, 430 F.3d 813, 817 (7th Cir. 2005) (citing *Timberlake v. Davis*, 409 F.3d 819, 822 (7th Cir. 2005)). The state court's determination of competency is a factual determination that is entitled to deference. *See id.* at 820. In fact, a state court's factual determination is presumed to be correct, and

8

a petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Woods*, 430 F.3d at 817.

At the outset, I find it necessary to address Piatek's claim that the state appellate court's review under the "clearly erroneous" standard is "contrary to, or an unreasonable application of, established federal law." (Pet.'s Br. at 12-13.) Piatek contends that because the finding of competency is a finding of "constitutional fact," the "appeal court must conduct an 'independent review' of the entire record to make the final determination of whether a defendant was competent or not to stand trial, rather th[a]n simply giving deference to the trial court." (Pet.'s Br. at 13.) Piatek's argument is unavailing, however, because he appears to be confusing the standard by which the state appellate court reviews the state trial court's fact finding with the standard applicable in habeas corpus proceedings.

The Wisconsin Court of Appeals correctly applied the "clearly erroneous" standard of review to the lower court's findings of fact relating to competency, citing *State v. Byrge*, 2000 WI 101, ¶ 4, 237 Wis. 2d 197, 614 N.W.2d 477. The application of this standard is not contrary to federal law, however. Although a state court's competency determination was once characterized as a question of law or a mixed determination of law and fact, it is now clear that the question of whether a competency hearing is required is an issue of fact, as discussed above. *See Maggio v. Fulford*, 462 U.S. 111, 117 (1983); *Woods*, 430 F.3d at 820; *Rector v. Clark*, 923 F.2d 570, 573 (8th Cir. 1991); *Austad v. Risley*, 761 F.2d 1348, 1350 (9th Cir. 1985); *United States v. Greer*, 736 F.2d 1160, 1168 n.4 (7th Cir. 1984) (stating that the court's previous statement that the "question of bona fide doubt is a conclusion of law or a mixed determination of law and fact, is no longer applicable in habeas corpus proceedings"). Accordingly, it is also clear that "the federal courts in habeas corpus proceedings must 'show a high measure of deference to the fact findings made by the state courts,'"

9

*Greer*, 736 F.2d at 1167, defeating any notion that a court is to undertake an independent review of the entire record in a habeas proceeding.

Moving on, Piatek's first three claims are interrelated in that all three involve challenges to the trial judge's competency determination. He challenges the trial court's failure to order a competency hearing on April 16, 2004 and a competency examination on April 20, 2004 as a violation of his due process rights. Piatek's third claim is that he was incompetent at trial. Finally, his last claim is that he is entitled to an evidentiary hearing to present the results of an investigation conducted in relation to a prior 42 U.S.C. § 1983 lawsuit.

**A. Competency Hearing Request of April 16, 2004.**

Piatek argues that his due process rights were violated when the trial judge denied his request for a competency hearing on April 16, 2004. Particularly, Piatek argues that his behavior as described by counsel, his suicide attempt of June 22, 2003, and his suicide letter brought to the court's attention on April 16, 2004 should have triggered the judge to order a competency hearing.

Piatek's behavioral problems are apparent from a brief review of the transcripts of the proceedings. Early on, the court recognized these behavioral problems and ordered that Piatek be subject to a competency evaluation. In February 2003, Dr. Brad Smith concluded that Piatek was "competent, although he suffered from polysubstance dependence and anti-social personality disorder which featured deceitfulness and use of aliases." Dr. Smith also opined "to a reasonable degree of medical certainty that Piatek was able to understand the criminal proceedings and assist in his defense and that Piatek could choose to interact appropriately with counsel and the court." 2007 WI App 230, ¶ 3, 306 Wis. 2d 126, 740 N.W.2d 902. Piatek still moved for a competency hearing, but he later withdrew that motion in September 2003.

Case 1:08-cv-00569-WEC   Filed 08/10/10   Page 10 of 23   Document 25

At that point, it appears that all parties were of the opinion that Piatek was mentally fit to proceed to trial. When the issue of Piatek's competency arose again on the day before trial was scheduled to commence, Piatek's counsel described to the court Piatek's recent behavior, including his seemingly lack of focus and agitation. It is true that defense counsel is generally is a position to "evaluate a defendant's ability to understand the proceedings." *See Balfour v. Haws*, 892 F.2d 556, 561 (7th Cir. 1989) (quoting *United States ex rel. Rivers v. Franzen*, 692 F.2d 491, 500 (7th Cir. 1982)). Nevertheless, the trial court here determined that Piatek was also manipulating his counsel.

Under Wisconsin law, a court shall order competency proceedings "whenever there is reason to doubt a defendant's competency to proceed." Wis. Stat. § 971.14(1) (2007-2008). After contacting Dr. Bohlmann, the treating physician at the Walworth County Jail, the trial court found that there was no reason to doubt Piatek's competency to proceed, finding specifically that his conduct was an extension of his attempt to manipulate counsel and the court. The Wisconsin Court of Appeals concluded that the trial court's findings of fact were not clearly erroneous. Expanding, the court stated the following:

> The court found that Piatek's suicide letter was consistent with his prior conduct in the case, including false claims, Piatek was attempting to manipulate his counsel, and whatever problems Piatek was having, he brought them on himself by ceasing Prozac without consulting a physician and when his trial was imminent. During the April 16 hearing, Piatek demonstrated that he was following the proceedings and was alert. The court found that Piatek was malingering and maneuvering and has been doing so throughout the case. The court did not find a basis to doubt Piatek's competency on April 16. The court's findings of fact are not clearly erroneous, and the court applied the proper legal standards.

2007 WI App 230, ¶ 27, 306 Wis. 2d 126, 740 N.W.2d 902.

None of Piatek's grounds for believing he was entitled to a competency hearing on April 16, 2004 have merit. First, Piatek argues that it was error for the trial judge to deny his requests for a competency hearing because Dr. Brian Bohlmann was unable to provide fair testimony because he was

a named defendant in a previous § 1983 lawsuit filed by the petitioner for failing to provide him with adequate mental health treatment. However, there is no evidence that suggests that Dr. Bohlmann was biased in any way such that his opinion was not a reflection of his fair assessment of Piatek's condition. In fact, Dr. Bohlmann confirmed that the symptoms displayed by Piatek and described by Piatek's counsel were consistent with the "exaggerated effects" of having stopped the medication he had been taking. Dr. Bohlmann further opined that it was not "more likely that his condition [would] improve" by the following Monday, which was when trial was scheduled to commence, and that if Piatek was "actively suicidal," "specific, urgent intervention" would be required. (Ex. FF at 34.) Although Dr. Bohlmann stated that he believed that Piatek would not improve any time in the near future because his conduct was a manifestation of voluntary behavior, (Ex. FF at 37), this is simply not enough evidence to suggest, much less prove, that Piatek's § 1983 lawsuit against him swayed his opinion of the matter before the court that day.

Second, Piatek's argument that as an internal medicine doctor, Dr. Bohlmann was not able to offer a professional opinion on his competency also fails. It appears as though Dr. Bohlmann did not offer a conclusive opinion of Piatek's competence. Although the trial court consulted the physician on April 16, the trial court did not rely exclusively on Dr. Bohlmann's medical opinion in denying a competency hearing; Dr. Bohlmann's opinion was merely one factor in the trial court's decision.

Piatek also unsuccessfully argues that information regarding his first suicide attempt on June 22, 2003 and his letter dated April 8, 2004 communicating an intent to commit suicide constituted sufficient doubt of his competency to proceed such that the trial court should have ordered a competency hearing. With respect to his June 22, 2003 suicide attempt, Piatek withdrew his request for a competency hearing in September 2003, suggesting that the February 2003 competency evaluation was not invalid and substantially negating his later-formed belief that his first suicide

attempt in June 2003 alone was sufficient to trigger a competency hearing. With respect to Piatek's suicide letter, the trial court found it consistent with Piatek's behavior throughout the entire case. Moreover, because the trial court was in the best position to observe Piatek and because there is no evidence that suggests its observations and decision to deny Piatek's competency hearing request on April 16, 2004 was based on an unreasonable determination of the facts in light of the evidence, the trial court's factual determination will be accorded considerable deference. Because Piatek has not demonstrated factual error by clear and convincing evidence, his petition will be denied as to this claim.

**B. Competency Examination Request on April 20, 2004.**

Piatek next argues that the court erred on April 20, 2004 when it failed to order a competency examination sua sponte to determine his competency after the Trazodone overdose. After a postconviction hearing regarding Piatek's competence, the trial court determined that no competency evaluation was needed. The trial court pointed out that while Piatek began a prescription of psychotropic medication and discontinued the use of this medication in the meantime, the symptoms he exhibited paralleled his earlier exhibited symptoms that prompted the competency evaluation. The trial judge indicated that "[h]istorical evidence" led him to believe that the defendant's behavior was more akin to "extraordinary tactics." (Ex. GG at 38.) Concluding that Piatek's overdose was a manifestation of malingering, which the competency examiner attested to fourteen months earlier in February 2003, the trial judge did not find that a competency examination was warranted.

On appeal, the Wisconsin Court of Appeals affirmed, finding the following:

The court's observations of Piatek, the failure of Piatek's counsel to raise the competency issue and counsel's assertion that Piatek was ready for trial, the lack of weight the court gave to the psychiatrist's testimony about Piatek's alleged impairment on April 20, the testimony of the officer who was with Piatek that day, and the hospital discharge summary all support the circuit court's finding that Piatek was competent for trial on April 20. We reject Piatek's argument that the court should have engaged

13

him in a colloquy to assess his condition on April 20. The court's findings of fact are
not clearly erroneous, and the court applied the proper legal standards.

2007 WI App 230, ¶ 28, 306 Wis. 2d 126, 740 N.W. 2d 902.

Piatek's second argument is two-fold. First, he argues that the fact of his overdose on the day
trial was scheduled to commence, April 19, warranted a competency examination. Second, he argues
that the effects of the Trazodone overdose, namely, sedation, rendered him incompetent. This second
argument speaks toward Piatek's third claim and will therefore be addressed accordingly.

Certainly, the trial judge's reasoning was not without imperfection. For instance, the trial court
mistakenly indicated that the competency examiner had before him evidence of Piatek's suicide
attempts in making his competency determination. Because his suicide attempts occurred after the
competency examination and were therefore not accounted for at the time of his competency
examination, Piatek contends that it was error for the judge to rely on the results of that examination
in declining to hold a competency hearing.

However, not every suicide attempt invariably creates doubt concerning a defendant's
competency. Reviewing the effect of a suicide attempt on a defendant's competency, the Wisconsin
Court of Appeals found that "[k]nowledge or lack thereof of the alleged prior suicide attempt does not
change our analysis. 'Although a defendant may have a history of psychiatric illness, a medical
condition does not necessarily render the defendant incompetent to stand trial.'" 2007 WI App 230,
¶ 29, 306 Wis. 2d 126, 740 N.W.2d 902.

As evidenced by the state courts, Piatek's suicide attempts are distinguishable from Piatek's
cognitive ability to consult with counsel and to rationally understand the proceedings against him. Dr.
Smith found that Piatek suffered from polysubstance dependence and anti-social personality disorder
featuring deceitfulness. Nonetheless, these disturbances can coexist with the competency required to
stand trial, as illustrated by Dr. Smith's finding that Piatek was competent to stand trial and that he

14

could choose to interact appropriately with counsel and court. *See United States v. Franzen*, 1980 U.S. Dist. LEXIS 17696, at *10-12 (N. Dist. Ill. November 7, 1980) (finding petitioner competent when two psychiatrists found that her depression and suicide attempts coexisted with the competency required to stand trial). Indeed, "a trial court must always be alert to circumstances suggesting a change." *Drope*, 420 U.S. at 181. Although Piatek's last suicide attempt changed the circumstances, the trial court's decision was ultimately premised on the belief that Piatek's last suicide attempt was consistent with his established pattern of manipulation and malingering.[2] Absent more, I defer to the trial court's finding at the postconviction hearing that the psychiatric report remained a valid description of Piatek's competence.

In addition, the trial court did not elicit information from Piatek directly upon Piatek's return. However, the lack of such colloquy is not detrimental because defense counsel indicated that Piatek was ready to proceed and, more importantly, did not at any time during the trial, inform the judge that Piatek was being uncooperative or was unable to assist with his defense. Furthermore, the trial judge as well as Sergeant Thomas Hausner, who was in charge of courthouse security, perceived Piatek to be alert upon his return on April 20. Because all signs indicated Piatek was ready to proceed, the court of appeals rejected Piatek's argument that the court should have engaged him in a colloquy.

This is exactly the type of fact finding that is to be given deference because the trial court was undoubtedly in the best position to make this type of credibility determination. Therefore, to now say,

---

[2] At one point, Piatek argues that the February 2003 competency evaluation was flawed because the examiner did not review the police reports nor did he review any documentation regarding prior commitments and findings. (Pet.'s Br. at 24-25.) Accordingly, Piatek contends that it was error for the trial court to base its decision on this competency evaluation. It does not appear that this argument was raised on appeal before the Wisconsin Court of Appeals, nor does this argument appear to have been advanced by counsel before the trial court. In addition, after counsel's initial objection to this report, Piatek withdrew his motion for a competency hearing, signaling to the trial court that he no longer wished to pursue this objection. Taken together, these reasons persuade me that this argument does not entitle Piatek to habeas corpus relief.

15

with the advantage of hindsight, that Piatek's suicide attempt on the first day of trial (after the previous delays attributable, at least in part, to Piatek) raised a "bona fide doubt" as to Piatek's competence would be unwarranted. Moreover, because the trial judge reasonably believed that Piatek's behaviors did not call his competence into question, the duty to sua sponte inquire into his mental state never arose.

Piatek cites *Drope* and *United States v. Loyola-Dominguiez*, 125 F.3d 1315 (9th Cir. 1997), for the proposition that his suicide attempt on the morning of trial should have triggered the judge to order further competency proceedings. In both cases, the petitioners attempted suicide either immediately before or during trial, and the trial judge did not order further competency proceedings. The Supreme Court in *Drope* and the court in *Loyola-Dominguiez* found that the trial judge's failure to order competency examinations violated the petitioners' due process rights. *Drope*, 420 U.S. at 180-82; *Loyola-Dominguez*, 125 F.3d at 1319. Significantly, the petitioners' suicide attempts were examined in light of all of the circumstances of each case, including but not limited to the information available prior to and during trial. *See Drope*, 420 U.S. at 180; *Loyola-Dominguez*, 125 F.3d at 1318-19 (stating that it did "not believe that every suicide attempt inevitably creates a doubt concerning the defendant's competency").

The information available to the trial judge in the instant case was much different than the information available to the trial judges in *Drope* and *Loyola-Dominguez* in that the trial judge here found little merit to the other indicia of purported incompetence in light of all of the information. Unlike the petitioner in *Drope*, Piatek was present for his entire trial, and thus, the judge had the opportunity to observe his demeanor at trial. Unlike the circumstances in *Loyola-Dominguez*, Piatek did not exhibit confusion regarding the nature and consequence of the proceedings, and the court had enough information to make a competency determination.

In the present case, the record does not establish that Piatek's last suicide attempt changed his ability to understand the proceeding or to assist with his defense. Therefore, due process did not require a competency examination subsequent to Piatek's last suicide attempt; and Piatek is not entitled to habeas relief based on this claim.

**C. Competency to Stand Trial.**

Piatek's third competency related claim is that his due process rights were violated because he was sedated and incompetent during trial. With respect to this claim, the court of appeals found the following:

> The premise of Piatek's argument is flawed. The record before this court does not indicate that Piatek attended his trial in a sedated condition. . . . [T]here was no indication that Piatek was anything other than alert and ready for trial on April 20 upon his return from the hospital. The circuit court was in the best position to determine this, and the court's postconviction rationale for permitting trial to go forward on April 20 is supported by the record, including its findings of fact and its credibility determinations. Piatek's claim that he appeared "before the jury in an extremely drugged condition" is not borne out by the record.

2007 WI App 230, ¶ 30, 306 Wis. 2d 126, 740 N.W.2d 902. Piatek argues that the court's decision was contrary to, or involved an unreasonable application of federal law because he, in fact, has no recollection of the first two days of trial. (Pet.'s Br. at 23.)

In *Drope*, the Court identified several factors that are relevant to determining whether further inquiry regarding a defendant's competency is required, including "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." 420 U.S. at 180. The Court further explained that "even one of these factors standing alone may, in some circumstances, be sufficient" to create a reasonable doubt regarding the defendant's competence. *Id.*

Here, the evidence of irrational behavior prior to trial was attributed to manipulation and malingering on the part of Piatek. With respect to Piatek's demeanor at trial, the trial court found him to be alert and ready during trial, dispelling any concerns that the Trazodone overdose caused Piatek

Case 1:08-cv-00569-WEC   Filed 08/10/10   Page 17 of 23   Document 25

to be so sedated that he was unable to understand the proceedings against him, to cooperate with his counsel, and to consult with his counsel with a reasonable degree of rational understanding. Despite the above, Piatek states that he had a prior commitment for incompetency in California. (Pet.'s Br. at 25.)

It was not evident until after Piatek's trial that there were 6,020 nanograms of Trazodone per one milliliter of blood in Piatek's system, which Dr. Pankiewicz stated was approximately ten times the therapeutic dose. (Ex. OO at 19, 29.) However, the trial judge discredited Dr. Pankiewicz's competency opinion to some extent because in forming his opinion, he did not consult with any person who had contact with Piatek on the day trial resumed. By all factual accounts, Piatek was alert during his trial, and while he was prohibited from using a writing utensil, the evidence demonstrates that Piatek communicated with counsel during his trial, thereby actively assisting in his defense.[3]

Simply stated, the state court's factual determination is presumed to be correct, and Piatek has not rebutted this presumption by clear and convincing evidence. I am required to give deference to the state court's factual findings, and in doing so, I conclude that its findings related to Piatek's competency did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Piatek is not entitled to habeas relief as to this claim.

**D. Evidentiary Hearing.**

Lastly, Piatek claims that he is entitled to an evidentiary hearing because he did not have a full and fair opportunity to present new evidence regarding his incompetency in the state court

---

[3] Piatek claims that he was not as active the first day of trial, but this could have been attributed to any number of reasons. Without more, Piatek has not rebutted the presumption of correctness of the state court's competency determination by clear and convincing evidence.

18

proceedings. Specifically, Piatek wishes to present evidence of the investigation and civil settlement stemming from his § 1983 claim against his jailers and the jail doctor, which revealed on August 15, 2005 that his suicide attempts on June 22, 2003 and April 19, 2004 were "bona fide attempts to commit suicide." (Pet.'s Br. at 26.)

The availability of an evidentiary hearing on habeas review is addressed in 28 U.S.C. § 2254(e)(2), which provides that no such hearing may be held "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings," except in several narrow exceptions provided in § 2254(e)(2)(A) and (B). Section 2254(e)(2)(A) excepts claims from the statutory bar that rely upon a new rule of constitutional law or that rely on a factual predicate that could not have been previously discovered through the exercise of due diligence. Section 2254(e)(2)(B) provides an exception when a petitioner makes a showing that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

In his brief in support of his habeas petition, Piatek claims that the *August 2005* results of the investigation, i.e., that his suicide attempts were "bona fide," constituted new evidence. (Pet.'s Br. at 26-27; Ex. E.) His postconviction hearing was held on *September 28, 2006*, at which time his counsel raised three issues: (1) the trial court erred in failing to order a second competency examination; (2) Piatek was denied his right to a fair and impartial judge; and (3) Piatek was denied due process of law because he was incompetent at the time of trial. Given this time line, it appears to me that Piatek possessed the "new evidence" he now seeks to present in an evidentiary hearing at the time of his state postconviction hearing. Therefore, any failure to develop the factual basis of his claim in his state court proceedings is attributable to only him or his counsel, making § 2254(e)(2)(A) inapplicable. Section 2254(e)(2)(B) also does not apply because Piatek simply has not shown that the

19

facts underlying his competency claim would be sufficient to establish by "clear and convincing evidence" that but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offense. Accordingly, under 28 U.S.C. § 2254(e)(2), I am precluded from providing Piatek an evidentiary hearing on this claim.

Although Piatek initially argued that evidence of his "bona fide" suicide attempts was new evidence, in his reply memorandum, Piatek appears to argue that the results of the investigation did *not* comprise new evidence. He states that the "so called 'new evidence' is a vital part of what the evidence has already shown; that Piatek attempted to take his own life. The state courts were presented with these other facts, thus, this is an evidentiary issue that has already been litigated in the State Courts on the underlying claim." (Pet.'s Reply at 11.) Assuming that this information was presented in the state courts, Piatek would not necessarily be entitled to an evidentiary hearing. He would only be entitled to an evidentiary hearing in federal court if (1) he has alleged facts that, if proved, would entitle him to habeas relief and (2) the state courts, for reasons beyond his control, never considered his claim in a full and fair hearing. *See Davis v. Lambert*, 388 F.3d 1052, 1061 (7th Cir. 2004); *Matheney v. Anderson*, 253 F.3d 1025, 1039 (7th Cir. 2001). Applying this test to Piatek's case, I find that Piatek would not be entitled to an evidentiary hearing on his competency claim.

To be sure, an attempted suicide raises very grave concerns. As previously discussed, however, not every suicide attempt creates a doubt concerning the defendant's competency. If proved, the facts alleged by Piatek would not entitle him to habeas relief. After the postconviction motion hearing, the state court did not find that Piatek's suicide attempts warranted a second competency examination, and this factual determination has not been rebutted by clear and convincing evidence. Under the second prong of this test, for all practical purposes, the state court had before it evidence

of Piatek's suicide attempts.[4] Because the state courts were aware of both of Piatek's suicide attempts, the state courts considered his claim in a full and fair hearing. Accordingly, Piatek cannot satisfy either prong of this test, and thus, he is not entitled to an evidentiary hearing in federal court.

There is one final matter to address. The recently amended provisions of Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part, as follows:

> a) Certificate of Appealability. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Under 28 U.S.C. § 2253(c), a district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court of appeals has held that this standard differs only in scope from the certificate of probable cause standard that was previously developed and applied by the courts. *See Herrera v. United States*, 96 F.3d 1010, 1012 (7th Cir. 1996). The *Herrera* court said that "a certificate of probable cause places the *case* before the court of appeals, but a certificate of appealability must identify each *issue* meeting the 'substantial showing' standard." *Id*. (emphasis added). Thus, for the court to issue a certificate of appealability to Piatek, it must identify for the court of appeals the issues that are "debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (emphasis added) (quoting *Gordon v. Willis*, 516 F. Supp.

---

[4] Dr. Pankiewicz testified that Piatek ingested a potentially lethal dose of Trazodone.

911, 913 (N.D. Ga. 1980)). This test was reiterated in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), *rev'd on other grounds, Miller-El v. Dretke*, 545 U.S. 231 (2005).

> Consistent with our prior precedent and the text of the habeas corpus statute, we reiterate that a prisoner seeking a COA need only demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.

*Id.* at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In my opinion, and for the reasons set forth in this decision denying Piatek's habeas corpus petition, none of Piatek's claims warrants a certificate of appealability. Put simply, the petitioner has not demonstrated "a substantial showing of the denial of a constitutional right" by demonstrating either that jurists of reason could disagree with this court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Consequently, the court will deny Piatek a certificate of appealability. Of course, Piatek retains the right to seek a certificate of appealability from the court of appeals. *See* Fed. R. App. P. 22(b).

## V. CONCLUSION AND ORDER

For the foregoing reasons, Piatek has not demonstrated that he is entitled to federal habeas corpus relief on any of the asserted grounds. Therefore, Piatek's petition for a writ of habeas corpus will be denied, and this action will be dismissed. In addition, none of the issues Piatek has presented warrants a certificate of appealability.

**NOW THEREFORE IT IS ORDERED** that Piatek's petition for a writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this <u>10th</u> day of August 2010 at Milwaukee, Wisconsin.

       **BY THE COURT**:

       <u>s/ William E. Callahan, Jr.</u>
       WILLIAM E. CALLAHAN, JR.
       United States Magistrate Judge